## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CR-0003-CVE |
| | ) | (19-CV-0022-CVE-FHM) |
| JOHN ELDRIDGE CONE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 71). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant argues that he received ineffective assistance of counsel in connection with his suppression hearing, and he argues that he received inaccurate advice about issues that could be raised on direct appeal. He also asserts that defense counsel failed to object to a sentencing enhancement based on the presence of a firearm. Plaintiff has filed a response (Dkt. # 82) and has attached an affidavit from defendant's former attorney, Stephen Greubel, to its response. Defendant has filed a reply (Dkt. # 83), and defendant's § 2255 motion is ripe for adjudication.

### I.

On January 14, 2016, a grand jury returned an indictment charging defendant with being a felon in possession of a firearm and ammunition (count one), possession of a controlled substance

with intent to distribute (count two), and carrying a firearm during and in relation to a drug trafficking crime (count three). Dkt. # 2. Defendant made his initial appearance on January 21, 2016, and Greubel was appointed to represent defendant. Dkt. # 9. The Court entered a scheduling order, inter alia, setting a jury trial for March 22, 2016. Defendant filed a motion to suppress (Dkt. #15) challenging the legality of a traffic stop at which the firearm, ammunition, and illegal drugs were seized from his vehicle. The Court set defendant's motion for an evidentiary hearing on March 10, 2016. Greubel filed a motion to continue the suppression hearing and jury trial, because defendant was facing a statutory mandatory minimum sentence of 25 years as to count three and Greubel was seeking to negotiate a plea agreement to minimize defendant's sentence.[1] Dkt. # 18. The Court granted the motion to continue, and reset the suppression hearing for April 8, 2016 and the jury trial for April 18, 2016.

Greubel states that he met with defendant on March 16 and 22, 2016 to prepare for the suppression hearing, and they discussed defendant's version of the events and reviewed the evidence and legal research in Greubel's possession. Dkt. # 82-1, at 2-3.[2] After meeting with defendant, Greubel decided to challenge the validity of the traffic stop on the grounds that Tulsa Police Deparment (TPD) Officer Peter Maher could not have observed a traffic violation and that Maher was conducting an investigation that could not have reasonably been classified as a traffic stop. Greubel reviewed all of the police reports included in the discovery materials, including the reports prepared by Maher, and he identified an inconsistency concerning the direction in which defendant's

---

[1]     Defendant had a prior conviction under 18 U.S.C. § 924(c) and, under § 924(c)(1)(C)(i), his statutory mandatory minimum sentence was 25 years.

[2]     This and all other page citations are to the CM/ECF header at the top of the page.

vehicle was traveling when Maher allegedly observed a traffic violation. Id. at 3. Greubel personally visited the intersection where the traffic violation allegedly took place and the motel parking lot where defendant was later arrested. Id. Greubel also sent an investigator to speak to defendant's girlfriend and take photographs of defendant's vehicle, and he took steps to ensure that the investigator and defendant's girlfriend would be available to testify at the suppression hearing. Id. About a week before the suppression hearing, Greubel received additional discovery materials and he met with defendant on April 5, 2016 to discuss new developments in the case. Id. The new discovery materials included dash cam videos from three patrol cars that arrived on the scene after defendant was arrested, but Greubel did not find that the videos were helpful for defendant's motion to suppress. Id. Greubel does not recall whether he met with defendant to show him the new videos before the suppression hearing, but he does not dispute defendant's claim that no such meeting occurred. Id.

On April 8, 2016, the Court held a suppression hearing and plaintiff presented the testimony of TPD Officers Maher and Kristi Score. Dkt. # 27-1, at 1. Maher testified that he was on patrol near the intersection of East 41st Street South and Memorial Drive in Tulsa, Oklahoma on the night of November 29, 2015, and he observed a pickup truck without a functional tag light that was traveling through the intersection. Dkt. # 31, at 7. On direct examination, Maher testified that he was turning westbound onto East 41st Street South from South Memorial Drive, and the pickup was traveling the opposite direction on East 41st Street. Id. The tag light at issue was the rear tag light of the pickup truck and Maher stated that he was able to see the non-functional tag light in his rear view mirror. Id. at 8. Maher turned his vehicle around and began driving eastbound on East 41st Street, and he located the pickup truck in the parking lot of the Studio 6 motel. Id. at 9. Maher

3

parked his vehicle and knocked on the window of the pickup truck, and he asked the driver to step out of the vehicle after a brief conversation.  Id. at 11-12.  Maher observed a pistol sticking out of the center console of defendant's vehicle, and Maher pointed his pistol at the driver and instructed the him to get on the ground.  Id. at 14.  The driver did not initially comply and took a couple of steps forward, and the driver fled after Maher lunged at him.  Id. at 15.  Maher apprehended the driver and placed him in custody, and bystanders began to gather around the scene of the incident.  Id. at 16.  Backup officers arrived and provided assistance with gathering evidence from the scene, including an inventory search of the vehicle.  Id. at 20-21.

Greubel cross-examined Maher and used a photograph of the intersection of East 41st Street South and Memorial Drive when questioning Maher.  Id. at 23-24.  Greubel asked numerous questions concerning the direction and location of defendant's and Maher's vehicles, and he established that the vehicles were traveling in opposite directions and moving through an intersection when Maher allegedly observed the malfunctioning tag light.  Id. at 24-30.  Maher testified that the intersection was well lit and he was able to see the tag number of the vehicle.  Id. at 31-32.  Maher saw the vehicle in his rear view mirror after he passed through the intersection, and he saw the vehicle pull into the motel parking lot in her rear view mirror.  Id. at 33.  Maher did not activate the emergency lights on his patrol car when he turned around to initiate pursuit of the vehicle or when he found the vehicle in the motel parking lot.  Id. at 33-35.  Maher parked about 20 feet away from defendant's vehicle and knocked on the window.  Id at 35.  Maher was wearing his official uniform and asked the driver for his driver's license, but he did not recall if he specifically identified himself as a TPD officer.  Id. at 36.  Maher asked the driver if he had been to prison and why he was at the motel, and he asked the driver to step out of the vehicle.  Id. at 37.  Greubel played video footage

from Maher's patrol car that showed what happened after Maher asked the driver to step out of the vehicle. Id. at 39-40.  Greubel asked a series of questions to establish if any other video footage of the incident existed, but Maher testified that there would not be any video footage prior to defendant exiting the vehicle. Id. at 41.

TPD Officer Score testified that she arrived as a backup officer to assist Maher, and she found a gun lying in the front seat of the defendant's vehicle. Id. at 48.  She detected an odor of marijuana coming from inside of the vehicle, and the odor was stronger on the passenger side of the vehicle. Id. at 48-49.  She found a backpack sitting in the front seat on the passenger side, and inside the backpack she found small baggies containing various drugs and digital scales. Id. at 49.  Greubel chose not to cross-examine Score.

Greubel called John Floyd, an investigator employed by his office, to testify about photographs he took of defendant's vehicle, and the photographs show that the vehicle had functional tag lights. Id. at 52.  Floyd acknowledged that the photographs were taken about one week before the hearing and approximately four months after the date of the event giving rise to defendant's arrest.  Id.  Defendant's girlfriend, Tabitha Burns, also testified at the suppression hearing. Burns picked up defendant's vehicle from the impound lot after defendant's arrest, and she could not immediately determine if there was a problem with the tag light. Id. at 56.  She purchased replacement bulbs for the tag lights and took the vehicle to a mechanic, but the mechanic told her that the tag lights were functioning properly. Id. at 57.  Greubel made a closing argument raising two issues.  First, Greubel challenged Maher's credibility and he argued that Maher was not in a position to observed the tag light on defendant's vehicle. Id. at 65.  Second, Greubel argued that the incident could not reasonably be classified as a traffic stop, because Maher did not approach defendant's

vehicle until well after he allegedly observed the traffic violation and his subsequent investigation was unrelated to the traffic violation.  Id. at 67-68.

The Court entered an opinion and order (Dkt. # 28) denying defendant's motion to suppress, and Greubel and Assistant Federal Public Defender Whitney Mauldin consulted with defendant about his options following the denial of the motion to suppress.  Dkt. # 82-1, at 4.  They advised defendant that he faced a 25 year mandatory minimum sentence if he was convicted of count three, and they counseled defendant about the risks and benefits of going to trial.  Id.  They were able to negotiate a conditional plea agreement allowing defendant to appeal the denial of his motion to suppress, and the parties agreed to a specific sentence of 151 months imprisonment pursuant to Fed. R. Crim. P. 11(c)(1)(C).  This sentence was greater than the likely guideline range for count two on its own, but this sentence was significantly less than the mandatory minimum sentence of 25 years for count three.  On May 4, 2016, defendant entered a plea of guilty to count two of the indictment pursuant to a Rule 11(c)(1)(C) plea agreement for a specific sentence of 151 months.  Dkt. # 46. Defendant reserved the right to appeal the denial of his motion to suppress.  Id. at 3.  A presentence investigation report (PSR) was prepared by the United States Probation Office.  The total offense level for count two was 17, and this included a two level enhancement for possession of a firearm. PSR, ¶ 15.  Combined with a criminal history category of VI, this resulted in an advisory guideline range of 51 to 63 months.  However, the parties' stipulation to a sentence of 151 months was binding based on the Court's acceptance of the plea agreement.[3]   On August 5, 2016, the  Court formally

---

[3]     The PSR notes that defendant's sentence would be substantially higher if he had been convicted of all three counts.  Counts one and two would have grouped and the advisory guideline range for these counts would have been 130 to 162 months, and the Court would have been required to impose a consecutive sentence of at least 25 years as to count three.

accepted the plea agreement and entered a judgment and commitment sentencing defendant to 151 months imprisonment. Dkt. # 55. Defendant appealed the denial of his motion to suppress, and the Tenth Circuit Court of Appeals affirmed this Court's decision. Dkt. # 67. The issue raised on appeal was whether Maher exceeded the scope of a traffic stop by asking about defendant's criminal history and travel plans. The Tenth Circuit determined that Maher's conduct was reasonable and that defendant failed to establish a nexus between the questions and the discovery of illegal drugs in his vehicle.

## II.

Defendant asserts five claims of ineffective assistance of counsel in his § 2255 motion. He has asserted two claims related to the suppression hearing, and he argues that Greubel failed to impeach Maher and Score (ground one) and Greubel should have requested a recess of the hearing to gather impeachment evidence (ground two). Defendant claims that Greubel failed to review dashcam videos of the arrest with him before the suppression hearing (ground three). Defendant argues that he would have gone to trial if he had been informed that he could not challenge Maher's credibility on appeal (ground four), and he claims that Greubel failed to object to a two point firearm enhancement in the presentence investigation report (ground five).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable

7

professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).  In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance."  Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance.  See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

**Suppression Hearing (Grounds One and Two)**

Defendant asserts two claims related to Greubel's performance at the suppression hearing. First, defendant claims that Greubel failed to adequately impeach Maher and did not even cross-examine Score, and he argues that these actions "proved fatal to the success of the motion to suppress." Dkt. # 71, at 15.  Second, defendant argues that Greubel should have requested a recess of the suppression hearing to gather impeachment evidence in light of aspects of Maher's testimony that conflicted with his police reports. Id. at 16.  Plaintiff responds that Greubel vigorously cross-examined Maher and established key facts challenging Maher's version of the events, and Greubel

8

also called two witnesses calling into doubt Maher's testimony that the tag light of defendant's vehicle was not functioning properly on the date of defendant's arrest.  Dkt. # 82, at 20-21.  For the same reasons, plaintiff argues that there was no reason for Greubel to request a recess to gather impeachment evidence, because he had already effectively cross-examined Maher.  As to Greubel's decision not to cross-examine Score, plaintiff argues that Score was not present when Maher initially made contact with and arrested defendant, and it was reasonable for Greubel to make a strategic decision not to cross-examine her.  Id. at 22.

Defendant asserts that Greubel failed to impeach Maher with inconsistencies between his police reports and his testimony at the suppression hearing.  Dkt. # 71.  Greubel states that he reviewed Maher's police reports in preparation for the suppression hearing, and there was an inconsistency concerning the direction that defendant's vehicle was traveling.  Dkt. # 82-1, at 3. Greubel visited the intersection where Maher allegedly observed the traffic violation and the motel parking lot where defendant was arrested.  Id.  Greubel states that he originally intended to impeach Maher with inconsistent statements in his police reports, but the impeachment value would likely be minimal if Maher were given an opportunity to describe the inconsistency as a mistake or scrivener's error.  Id. at 4.  Greubel viewed certain aspects of Maher's testimony as helpful to his argument that the incident was not a traffic stop, and he purposefully chose not to attempt to discredit these aspects of Maher's testimony.  Id.  Greubel saw no reason to cross-examine Score, because she was not present when Maher allegedly observed the traffic violation or when defendant was arrested. Id.

The Court has reviewed the transcript of the suppression hearing (Dkt. # 31), and Greubel's cross-examination very effectively highlighted weaknesses in Maher's testimony, particularly as to

the positions of Maher's and defendant's vehicle when Maher observed defendant's tag light.  Maher

acknowledged that he had already driven past defendant's vehicle and that he observed the traffic

violation in his rear-view mirror while driving away from defendant.  Dkt. # 31, at 33.  Greubel was

clearly familiar with Maher's police reports and he did use the reports during his cross-examination.

Dkt. # 31, at 37.  Greubel states that Maher's testimony established that he had a difficult vantage

point to observe the alleged traffic violation, and Greubel believed that confirming the implausibility

of Maher's versions of events was a better strategy than impeachment by means of the police reports.

Dkt. # 82-1, at 4.  Greubel's decision was reasonable and his cross-examination of Maher was very

effective.  The Court also notes that strategic decisions by defense counsel are afforded great

deference and "virtually unchallengeable" by means of an ineffective assistance of counsel claim.

Harris v. Sharp, 941 F.3d 962, 973 (10th Cir. 2019).  As to Greubel's decision not to cross-examine

Score, the Court has reviewed her testimony and she was not present for the events that formed the

basis for defendant's motion to suppress.  Defendant complains that Score was being untruthful

when she testified that she smelled marijuana, but this fact was irrelevant to issues raised in the

motion to suppress and the Court made no findings concerning her credibility.  The Court finds that

Greubel's cross-examination of Maher at the suppression hearing was effective, and his decision

concerning the use of Maher's police report for impeachment purposes was reasonable.  Ground one

of defendant's § 2255 motion is denied.

Defendant also argues that Greubel should have requested a recess to gather additional

impeachment evidence that could be used to challenge Maher's credibility.  Defendant does not

explain what impeachment evidence Greubel would have been likely to discover if he had requested

additional time.  The additional facts that Greubel allegedly could have discovered concern the

10

implausibility of Maher's version of his observation of a traffic violation, and these facts were known to defense counsel when he cross-examined Maher.  Dkt. # 71, at 16-17.  In fact, Greubel effectively used his cross-examination of Maher to bring all of these arguments to the Court's attention, and there is no basis to believe that Greubel needed a recess in order to gather additional evidence to impeach Maher.  Greubel states that he saw no reason to request a recess of the suppression hearing, and he believes that a recess would have benefitted plaintiff more than defendant. Dkt. # 82-1, at 4.  The Court finds that Greubel acted well within the range of reasonable professional conduct by proceeding with the suppression hearing without requesting a recess, and ground two of defendant's § 2255 motion is denied.

**Failure to Review Dash Cam Footage with Defendant (Ground Three)**

Defendant argues that Greubel failed to review dash cam footage with him before the suppression hearing, and this prevented defendant from participating in the defense of the charges against him. Dkt. # 71, at 20-21; Dkt. # 83, at 1.  Plaintiff responds that Greubel showed the relevant dash cam footage at the suppression hearing, but there was no dash cam footage of the traffic violation or of the encounter before Maher asked defendant to step out of the vehicle.  Dkt. # 82, at 24.

The Court has reviewed defendant's arguments and finds that Greubel was not ineffective for allegedly failing to meet with defendant before the suppression to review dash cam footage with defendant.  Defendant claims that he could have provided additional assistance to Greubel concerning the "positioning of Maher's vehicle in relation" to defendant's vehicle, but it is not clear if defendant is referring to the positions of the vehicles in the intersection where the traffic violation occurred or at the motel parking lot.  Plaintiff argues that none of Maher's dash cam footage

11

concerned the traffic violation, because Maher did not activate his emergency lights and his vehicle's dash cam did not activate at that time.  Dkt. # 82, at 23.  Greubel states that he received dash cam footage from three officers who responded to Maher's call for backup, but none of dash cam footage shows the back of defendant's vehicle and did not show whether his tag light was functional.  Dkt. # 82-1, at 3.  Defendant complains that Greubel did not meet with him to review the dash cam footage with him before the suppression hearing, but he has not shown that this would been helpful to Greubel to prepare for the suppression hearing.  The Court has already determined that Greubel was prepared for the suppression hearing and that he effectively cross-examined Maher, and defendant's claim concerning the dash cam footage has no effect on the Court's previous findings concerning Greubel's preparation for the suppression hearing.  Ground three of defendant's § 2255 motion is denied.

**Advice Concerning Issues that Could Be Raised on Appeal (Ground Four)**

Defendant argues that Greubel and Mauldin misled him about the issues that could be raised on direct appeal, and he claims that Mauldin represented that he would be able to challenge Maher's credibility on appeal.  Dkt. # 71, at 22-23.  Plaintiff responds that Greubel denies that he offered any advice concerning the issues that could be raised on appeal, and defendant made an informed decision to plead guilty pursuant to the plea agreement offered by plaintiff.  Dkt. # 82, at 25-29.

Greubel's affidavit states that he and Mauldin met with defendant after the denial of the motion to suppress, and they discussed the risks and benefits of going to trial.  Dkt. # 82-1, at 4.  Greubel advised defendant that trial would allow an additional opportunity to cross-examine Maher, but defendant would be facing a mandatory minimum sentence of 25 years as to count three due to a prior conviction under § 924(c).  Id. at 5.  He believed that it was important to defendant to

preserve the right to appeal the denial of the motion to suppress, and Greubel and Mauldin were able to negotiate a conditional plea agreement that preserved defendant's appellate rights concerning his motion to suppress. Id.  However, it is not Greubel's practice to discuss what specific issues would be raised on appeal, because appellate counsel would not have had an opportunity to review the record and conduct legal research until the case is concluded. Id.

The Court has reviewed defendant's § 2255 motion (Dkt. # 71, at 22-23) and reply (Dkt. #83, at 4), and there is no basis to find that Greubel or Mauldin misled defendant about the issues that could be raised on direct appeal.  Instead, it appears that defendant wanted to challenge Maher's credibility and he mistakenly inferred that appellate counsel would raise this issue.  According to defendant, Mauldin stated "[w]hat if I am able to negotiate a conditional plea deal where you are able to reserve your right to appeal the ruling of the Motion to Suppress Hearing?"  Dkt. # 71, at 22.  This is not specific advice about issues could be raised on appeal and this is a correct statement by Mauldin that a conditional plea would preserve defendant's right to challenge the denial of his motion to suppress.  Defendant's reply further supports this understanding of the advice provided by Greubel and Mauldin, because defendant complains that his counsel did not explain the "parameters of the appeal."  Dkt. # 83, at 4.  This appears to be an acknowledgment by defendant that neither Greubel nor Mauldin gave him advice concerning the specific issues that could be raised on appeal.  Greubel states that he does not discuss specific issues that might be raised on appeal, because the "exact framing of appellate issues is not determined until after the record on appeal is prepared and appellate counsel has had an opportunity to review that record . . . ."  Dkt. # 82-1, at 5.  The Court finds that defendant was not misled by Greubel or Mauldin about the issues that could

be raised on direct appeal, even if defendant mistakenly formed a subjective belief that Maher's credibility could be challenged de novo on direct appeal.

Construing defendant's § 2255 motion broadly, he could be faulting appellate counsel for not attempting to challenge Maher's credibility on direct appeal.  Dkt. # 71, at 23.  Plaintiff responds that a district court's credibility findings are given great deference by an appellate court, but credibility determinations are subject to review for clear error.  United States v. Pacheco, 884 F.3d 1031, 1050 (10th Cir. 2018).  While appellate counsel could raise a credibility challenge, this is not likely to be a successful issue on direct appeal, and appellate counsel has the discretion to leave out weaker arguments in favor of issues that are more likely to succeed.  Dkt. # 82, at 26-27.  Plaintiff is correct that appellate counsel is not required to raise every non-frivolous issue on appeal, and appellate counsel must "engage in a process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail."  Scott v. Mullin, 303 F.3d 1222, 1230 n.4 (10th Cir. 2002).  Defendant has made no attempt to show that a reasonable attorney would have challenged Maher's credibility on direct appeal, and the law is clear that credibility findings are subject to great deference on appeal.  To the extent that defendant challenges the performance of appellate counsel, the Court does not find that appellate counsel was ineffective for failing to challenge Maher's credibility on direct appeal.  Ground four of defendant's § 2255 motion is denied.

**Firearm Enhancement in PSR (Ground Five)**

Defendant asserts that Greubel should have objected to an enhancement in the PSR for possession of a firearm in connection with a drug offense.  Dkt. # 71, at 24.  Plaintiff responds that the firearm enhancement clearly applied based on the location of the firearm and drugs in

14

defendant's vehicle and, even if there was an error, defendant would have received the same sentence under the plea agreement.  Dkt. # 82, at 29-30.

Maher's testimony at the suppression hearing established that he saw the butt of a pistol sticking out near the center console of defendant's vehicle, and it was within reach of defendant during the encounter.  Score arrived after defendant was in custody, and she found a backpack containing methamphetamine, plastic baggies, and a digital scale in the front seat next to where Maher initially observed the firearm.  Under United States Sentencing Guideline § 2D1.1(b)(1), two levels should be added to the base offense level "[i]f a dangerous weapon (including a firearm) was possessed" as part of the offense.  The Application Notes explain that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S. SENTENCING GUIDELINES MANUAL 2D1.1, cmt. n.11 (U.S. SENTENCING COMM'N 2015).  The PSR states that a firearm was recovered from the center console and that a backpack containing methamphetamine was also recovered from the front passenger seat.  Based on these facts, it was not "clearly improbable" that the presence of a firearm was unrelated to the offense of possessing methamphetamine with the intent to distribute, and Greubel had no reason to raise a meritless objection to this enhancement.  The Court also notes that defendant pled guilty pursuant to a plea agreement for a specific sentence of 151 months, and the Court would have imposed the same sentence even without the firearm enhancement.  Ground five of defendant's § 2255 motion is denied.

**III**.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255.  Section 2253(c) instructs that the court may

15

issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).  After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right.  The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that  defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. #  71) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability as to any claim raised in defendant's § 2255 motion.

**DATED** this 17th day of June, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE